# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

CARTER WINDES, individually and          )
d/b/a MID-AMERICA HYPERBARICS, INC.,     )
and/or MID-AMERICA HYPERBARICS, LLP,     )
                                         )
                 Plaintiffs,             )
                                         )
v.                                       )          Case No.  04-CV-854-JHP-FHM
                                         )
RICHMOND HYPERBARIC MEDICINE, INC.,      )
an Arkansas corporation; JOHN A. RICHMOND, )
 JR., and OCEAN BREEZE HYBERBARIC,       )
INC.,                                    )
                                         )
                 Defendants.             )

## ORDER

Before the Court is Defendants' Motion for Summary Judgment, Plaintiffs' Response

thereto, and Defendants' Reply, as well as Plaintiffs' Motion for Partial Summary Judgment,

Defendants' Response thereto, and Plaintiffs' Reply.

Pursuant to Fed. R. Civ. P. 56, Defendant Richmond moves the Court for summary

judgment in his favor on all causes of action remaining in Plaintiffs' Amended Complaint, to

wit:  breach of joint venture, breach of fiduciary duty, fraud, breach of contract, quantum meruit,

and unjust enrichment.  Defendants Richmond Hyperbaric and Ocean Breeze join Richmond's

motion as to the causes of action for quantum meruit and unjust enrichment, the only claims

asserted against them.  Conversely, Plaintiff moves the Court for summary judgment on the

following issues:

(1)        that Plaintiff Windes and Defendant Richmond were engaged in a joint venture

1

for purposes of obtaining a hyperbaric service contract with Tulsa Regional Medical Center (TRMC);

(2)     that Richmond owed Windes fiduciary duties as a result of this joint venture;

(3)     that Richmond wrongfully dissociated from the venture and usurped the TRMC contract;

(4)     that the profits Defendants reaped from the TRMC contract are held in trust for the joint venturers, *i.e.*, Windes and Richmond.

In the interests of accuracy and efficiency, the Court treats these pleadings as cross-motions.  For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part, and Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

## BACKGROUND

From the undisputed facts in this case, the Court finds the following:

Around October 2002, Plaintiff Carter Windes approached Defendant John Richmond about pursuing a contract to provide hyperbaric services at TRMC.  Together with Lori Ormsby of TRMC, the parties believed that this operation would be viable.  Windes and Richmond decided to split their profits equally, with Richmond contributing consulting services based on his experience as a certified hyperbaric technician, and Windes taking responsibility for financing and negotiations.  These terms were not reduced to writing.  Both parties attended meetings with TRMC, and TRMC believed that they were working together on the project.  The parties were working toward a final contract by February 2003.

At some point during the contract negotiation process, Lori Ormsby of TRMC changed the contract drafted on behalf of Windes to show the name of the contractor to be "Ocean Breeze."  Ocean Breeze was an entity created by Richmond and incorporated on or around February 23, 2003.  Windes was not a part of Ocean Breeze.  In late February 2003, Lori

2

Ormsby of TRMC notified Windes that TRMC would not pursue the contract with him any longer.  Some time after Ormsby told Windes that their deal was off, Richmond informed Windes that their relationship was also "finished."  TRMC and Ocean Breeze executed a contract for Ocean Breeze to provide hyperbaric services to TRMC on March 7, 2003.  The relationship between Ocean Breeze and TRMC lasted until June 1, 2005.

Plaintiff now alleges that Defendant usurped the contract opportunity with TRMC and is liable to Plaintiff therefor.  The case is now before the Court on cross-motions for summary judgment.

## DISCUSSION

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law.  Id. at 249.  The presence of a genuine issue of material fact defeats the motion.

In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999).  The Court also interprets the rule in such a way as to isolate and dispose of factually unsupportable claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is also appropriate if any

element of the prima facie case lacks sufficient evidence to require submission to a jury. Anderson v. Liberty Lobby, 477 U.S. at 248-49.

The cross-motions for summary judgment filed by Plaintiff Carter Windes and Defendant John A. Richmond are now before the Court.

### I.  Windes and Richmond were engaged in a joint venture.

A joint venture is an association of two or more people to carry out a single business enterprise for profit.  Martin v. Chapel, Wilkinson, Riggs & Abney, 637 P.2d 81, 85 (Okla. 1981).  A joint venture is characterized by (1) joint interest in the project, (2) an express or implied agreement to share profits and losses, and (3) cooperative conduct to achieve the common purpose.  Id.; *see also* Crest Constr. Co. v. Ins. Co. of N. Am., 417 F. Supp. 564, 568-69 (W.D. Okla. 1976).  Plaintiff here asserts that the parties were engaged in a joint venture. Defendant denies that a joint venture was formed on the grounds that the parties did not acquire a joint interest in the project, nor did they agree to share losses [Def. Resp. at 5], although Defendant concedes that the parties agreed to share profits and engaged in cooperative conduct [Def. Mtn. at 14].

### A.  Joint Interest

A joint interest in the project is demonstrated when the parties are "engaged in an enterprise in which they have a community of interest and a common purpose in its performance."  Crest Constr. Co., 417 F. Supp. at 569.  In order to demonstrate a joint interest, the parties must combine "their property, capital, materials, money, efforts, skill, services, or knowledge in the undertaking."  48 C.J.S. *Joint Adventures* § 12 (cmt.).  The parties' contributions need not be equal in character or proportion "so long as each joint venturer

4

contributes something to the motive of the enterprise." Id.; *see also* Martin, 637 P.2d at 85 (each party must contribute "something promotive of the enterprise").

Here, the undisputed facts show that Windes and Richmond orally agreed to pursue a contract to provide hyperbaric services to Tulsa Regional Medical Center (TRMC). [Def. Mtn. at 4, ¶ 15; Pltf. Mtn. at 3, ¶¶ 1-4.] They each assumed duties toward the furtherance of the venture. Windes established initial contact with TRMC.  [Def. Mtn. at 4, ¶ 12; Pltf. Mtn. at 3, ¶ 2.] Windes was also supposed to secure financing [Def. Mtn. at 5, ¶ 18; Pltf. Mtn. at 4, ¶ 5] and continue negotiations with TRMC [Def. Mtn. at 5, ¶¶ 18, 22; Pltf. Mtn. at 4, 5, ¶¶ 6, 12]. Richmond was supposed to provide expertise on hyperbaric services, a crucial contribution to the venture, as Windes had no experience in this area. [Def. Mtn. at 4, ¶¶ 14-15; Pltf. Mtn. at 4, ¶¶ 5, 8.]  Both parties had contact with TRMC's contracting official [Def. Mtn. at 5, 9, 10, ¶¶ 20, 43, 45; Pltf. Mtn. at 3, 4, ¶¶ 3, 9], who believed that Windes and Richmond were working together [Def. Mtn. at 5, ¶ 20; Pltf. Mtn. at 4, ¶ 10].  Windes and Richmond undertook all of these activities with the agreement that they would share profits equally [Def. Mtn. at 4, ¶ 4; Pltf. Mtn. at 3, ¶ 4], which further implies a joint interest in the project.  *See* Ballard v. United States, 17 F.3d 116, 118 (5th Cir. 1994).  These actions also demonstrate the parties' cooperative conduct in furtherance of the purpose of the joint venture.

### B.  Profit and Loss Sharing

An agreement to share profits and losses may be express or implied.  Martin, 637 P.2d at 85.  Here, the parties expressly agreed to split their profits equally. [Def. Mtn. at 4, ¶ 4; Pltf. Mtn. at 3, ¶ 4.] While the parties did not have an express agreement as to losses, such agreement may be inferred.  Because Richmond agreed to provide consulting services "solely in return for a

share of expected profits, it could be seen that he stood to share in the losses of the enterprise as well as its profits." *See* <u>Crest Constr. Co.</u>, 417 F. Supp. at 468; *compare* Def. Mtn. at 10, ¶ 49 (stating that "Richmond was to receive 50% of the profits and was to have no personal financial liability whatsoever **for the purchase of the chambers**) (emphasis added), *with* Pltf. Mtn. at 4, ¶ 7 (noting that "Richmond's compensation was based on profits" and if the project was not profitable, "he would lose his time, travel, and efforts he put into the venture").

Based on its review of the undisputed facts in this case, as well as the applicable law, this Court finds that Windes and Richmond did establish a joint venture for the particular purpose of obtaining a hyperbaric service contract with TRMC.  Proposition One of Plaintiff's Motion for Partial Summary Judgment is therefore GRANTED.  For the same reasons, Argument One of Defendant's Motion for Summary Judgment, which is primarily predicated upon the proposition that no joint venture existed between these parties, is DENIED.  Because the Court finds that the agreement between these parties is properly characterized as a joint venture, the Court agrees with Defendant that Plaintiff's breach of contract claim is "simply a weaker version of the first cause of action for breach of joint venture agreement." [Def. Mtn. at 20.]  The oral contract alleged by Plaintiff that supposedly obligated Richmond to pay Windes a percentage of the profit [*see* Am. Compl. ¶ 47] is actually part of the oral joint venture agreement between the parties, rather than a separate contract.  The Court therefore GRANTS Argument Three of Defendant's Motion for Summary Judgment, and thereby disposes of Plaintiff's breach of contract claim.

## II.  The relationship between joint venturers is fiduciary in nature.

It is axiomatic that the relationship between joint venturers is fiduciary in nature and requires the utmost good faith in all dealings of the parties with each other.  <u>Rockett v. Ford</u>, 326

P.2d 787, 791 (Okla. 1958); Dike v. Martin, 204 P. 1106, 1109 (Okla. 1922).  As a matter of law,

"a joint adventurer . . . owes a fiduciary duty to the other partners not to open a competing

[enterprise] and not to divert assets of the joint venture to that competing [enterprise]."  Hallock

v. Holiday Isle Resort & Marina, 885 So. 2d 459, 462 (Fla. Ct. App. 2004).  This duty not to

compete, as well as other fiduciary duties, derives from state partnership law.  Crest Constr. Co.,

417 F. Supp. at 568.  Indeed, the law of partnership applies equally to joint ventures.  *See* The

Oklahoma Co. v. O'Neil, 440 P.2d 978, 984 (Okla. 1968)(citing O.K. Boiler & Welding Co. v.

Minnetonka Lumber Co., 229 P. 1045, 1048 (Okla. 1924)("After the parties have created and

engaged in a joint enterprise, although it may relate to a single transaction, the law of partnership

applies to the questions arising between and among the parties, and in relation to third

parties.")).  In Oklahoma, under the Revised Uniform Partnership Act, 54 Okla. Stat. § 1-101 *et*

*seq*., joint venturers owe each other the duty of loyalty and the duty of care.  Id. § 1-404(a).

Joint venturers' duty of loyalty to each other specifically includes "to refrain from competing

with the partnership in the conduct of the partnership business before the dissolution of the

partnership," among other duties.  Id. § 1-404(b)(3).  Further, a joint venturer must "account to

the partnership and hold as trustee for it any property, profit, or benefit . . . derived from . . . the

appropriation of a partnership opportunity."  Id. § 1-404(b)(1).  These obligations are directly at

issue in this case.

Because the Court finds that Windes and Richmond were engaged in a joint venture, the

Court also finds as a matter of law that these parties owed a fiduciary duty to each other.

Proposition Two of Plaintiff's Motion for Partial Summary Judgment is therefore GRANTED.

### III.  Richmond breached his duty of loyalty to Windes.

A party to a joint venture may always withdraw by giving notice to his partners.  54

Okla. Stat. § 1-601(1).  Here, Defendant did give notice of his express will to withdraw. [Def.

Mtn. at 17.]  However, Plaintiff asserts that Richmond's withdrawal was untimely and otherwise

inappropriate so as to constitute a breach of the joint venture agreement.  [Pltf. Mtn. at 13.]

Further, Plaintiff argues that even if Richmond properly terminated the venture, Richmond was

still not entitled to pursue the venture project independently, due to his ongoing duty not to

compete.  [Pltf. Mtn. at 14-15.]

In response to Plaintiff's claims of breach, Defendant alleges that the venture had already

failed.  [Def. Mtn. at 14-16.]  In certain cases, a joint venture may fail because conditions

necessary to its success cannot be met.  *See* Knight v. Cecil, 235 P. 1107, 1111 (Okla. 1925).  In

such instances,

> [i]f any party to the joint venture had refused to substantially perform his
> obligation, his associates might terminate their relation with him and carry out the
> enterprise to his exclusion, and if for this or any other valid reason they chose to
> terminate the relationship, they could do so **only by giving notice** to him that the
> relationship was then and there ended.

Id. at 1112.  Under the analogous Oklahoma partnership law, a party to a joint venture may seek

termination of the venture via judicial determination if his partner "engaged in conduct relating

to the partnership business which makes it not reasonably practicable to carry on the business in

partnership with the partner . . . ."  54 Okla. Stat. § 1-601(5)(iii).

Here, Defendant alleges that Windes "dropped the ball" so that TRMC refused to do

business with Windes, and the venture itself therefore became "impracticable."  [Def. Mtn. at 14-

16.]  In the alternative, Richmond asserts that he properly withdrew from the venture and

pursued the TRMC contract independently because Windes failed to perform. [Def. Mtn. at 17.]
However, because Defendant did not seek Windes's expulsion by judicial termination, the joint
venture was not successfully terminated and Richmond's withdrawal was therefore wrongful.

Although the Court recognizes the parties' belief that an ongoing "source of contention
lies in the extent and nature of the fiduciary duty owed " between them, *see* Hallock, 885 So. 2d
at 464 (Shepherd, J., dissenting in part), the Court does not find any genuine issues of material
fact to support said contention.  "[T]he four elements of an actionable breach of fiduciary duty
claim are: (1) the existence of a fiduciary relationship, (2) a duty arising out of the fiduciary
relationship, (3) a breach of the duty, and (4) damages proximately caused by the breach of
duty." FDIC v. Grant, 8 F. Supp. 2d 1285, 1299 (N.D. Okla. 1999).  Pursuant to the Revised
Uniform Partnership Act, 54 Okla. Stat. § 1-101 *et seq*., the Court finds that Richmond breached
the duty of loyalty he owed to Windes by virtue of their joint venture.  Although the timing of
the notice Richmond gave to Windes that the joint venture was "finished," relative to other key
events in the history of this venture, such as the timing of and circumstances surrounding the
formation of Ocean Breeze[1] is disputed, the fact of the matter is that Richmond's withdrawal
from the venture before the completion of the undertaking was wrongful as a matter of law.  *See*
id. § 1-602(b)(2)(I)("A partner's dissociation is wrongful only if . . . in the case of a partnership
for a . . . particular undertaking, before . . . the completion of the undertaking[,] . . . the partner

---

[1]Joint ventures differ from partnerships in that the parties to a joint venture may engage
in separate business enterprises – even competing ones – during the pursuit of the joint venture
project.  *See generally* Hallock, 885 So. 2d at 463-466 (Shepherd, J., dissenting in part).  Thus,
Richmond could have formed Ocean Breeze to pursue hyperbaric service contracts **with other
medical facilities** without insult or injury to his venture with Windes, which was formed solely
for the purpose of pursuing such a contract with TRMC.  It is the fact that Ocean Breeze
ultimately secured a contract with TRMC that raises the specters of breach and fraud in this case.

withdraws by express will . . . .").  Proposition Three of Plaintiff's Motion for Partial Summary

Judgment is therefore GRANTED, and Argument Two of Defendant's Motion for Summary

Judgment is DENIED.

In the event of wrongful dissociation, the withdrawing partner is liable for any damages

caused by the withdrawal.  Id. § 1-602(c).  It is well settled that a partner's duty of loyalty

extends well past that partner's withdrawal.  *See, e.g.,* Leff v. Gunter, 658 P.2d 740, 744 (Cal.

1983) ("A partner's duty not to compete with his partnership with respect to the partnership

opportunity which is actively being pursued by the partnership survives his withdrawal

therefrom.").  It is also well settled that, upon breach of that duty, the breaching partner must

compensate the others.  *See* id. ("A partner may not dissolve a partnership to gain the benefits of

the business himself, unless he fully compensates his copartner for his share of the prospective

business opportunity."); *see also* id. at 746 ("If a member of a copartnership avails himself of

information obtained by him in the course of the transaction of partnership business which is

within the scope of the firm's business, and thereafter applies it to his own account without the

consent or knowledge of his associates, he is liable to account to the firm for any benefit he may

obtain from the use of such information.").  Here, although Defendant is clearly liable, the

amount of any damages owed is still in dispute.  Proposition Four of Plaintiff's Motion for

Summary Judgment is therefore DENIED because the profits derived from Richmond's

usurpation of the joint venture's opportunity are unquantified.

### IV.  Plaintiff's fraud claims are still unresolved.

Whether Plaintiff believes Defendant's breach to be premised on fraud is unclear.

Plaintiff asserts a fraud claim against Defendant, predicated on the idea that Richmond was

supposed to "stay behind the scenes." [Am. Compl. ¶¶ 35-42; *see also* Def. Mtn. at 21.]  In order to prove fraud on this point, Windes must establish that (1) Richmond's promise to "stay behind the scenes" was a material misrepresentation, (2) it was false, (3) Richmond knew it was false, (4) Richmond intended Windes to rely on the misrepresentation, (4) Windes acted in reliance thereon, and (5) Windes suffered injury.  OUJI-Civ § 18.1; *see also* Ragland v. Shattuck Nat'l Bank, 36 F.3d 983, 990 (10th Cir. 1994) ("[A] fraud claim requires proof of these elements: a material misrepresentation, knowingly or recklessly made, with intent that it be relied upon, and actual reliance by another to his detriment, and that plaintiffs had stated a claim of fraud . . . with sufficient particularity to avoid dismissal of their claims.").

Plaintiff also argues that Richmond committed a fraud of omission by failing to notify Windes of TRMC's dissatisfaction with the progress of the joint venture and instead making arrangements to take over the project. [Am. Compl. ¶¶ 35-42; *see also* Pltf. Resp. at 23-24.]  To prove fraud by non-disclosure, Windes must show that (1) Richmond failed to disclose a past or present fact which he had a duty to disclose, (2) the fact was material, (3) Richmond failed to disclose the fact in order to create a false impression in Windes's mind, (4) Richmond intended Windes to act upon the false impression caused by the non-disclosure, (5) Windes acted in reliance thereon, and (6) Windes suffered injury.  OUJI-Civ § 18.2.  "Under Oklahoma law, in determining whether there is a duty to speak, consideration must be given to the situation of the parties and matters with which they are dealing." Okland Oil Co. v. Conoco Inc., 144 F.3d 1308, 1324 (10th Cir. 1998) (quoting Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp., 24 F.3d 1190, 1195 (10th Cir. 1994)).  For example, an "absolute positive duty to speak" may arise from a fiduciary duty or from a partial disclosure.  Id.

Defendant moves for summary judgment of Plaintiff's fraud claims on the grounds that Windes did not change his behavior or rely to his detriment on the alleged fraudulent misrepresentation or non-disclosure.  The Court finds this argument to be more artful than dispositive.  From the facts on hand, a jury could find reliance.  Moreover, if fraud does lie in this case, Plaintiff could be entitled to punitive damages, which would necessitate additional findings beyond the scope of the motions at issue here.  *See* Roberts Ranch Co. v. Exxon Corp., 43 F. Supp. 2d 1242, 1276 (W.D. Okla. 1997) ("Under Oklahoma law punitive damages are available for a breach of fiduciary duty where the gravamen of the claim sounds in tort.").  Argument Four of Defendant's Motion for Summary Judgment is therefore DENIED.

### V.  Plaintiff is not entitled to equitable remedies.

Plaintiff asserted claims for quantum meruit and unjust enrichment against all Defendants.  Defendants moved for summary judgment of Plaintiff's equitable claims on the grounds that Windes did not contribute to the joint venture and thus, does not deserve compensation in quantum meruit, and that any profits realized by Richmond and/or Ocean Breeze are attributable solely to their own efforts.  The Court finds that the issue of Windes's contribution to the joint venture may be subject to different interpretations under the facts presented such that summary judgment is inappropriate on that point.

However, the Court notes that neither party addressed the issue of equitable jurisdiction, which requires that legal remedies be insufficient to redress the plaintiff's injuries before a plaintiff is entitled to recover in equity.  *See, e.g.,* Switzer v. Coan, 261 F.3d 985, 991 (10th Cir. 2001) (noting that equitable relief is generally only available in the absence of adequate remedies

at law). The Court finds that legal remedies would be appropriate in this case, particularly given the characterization of the relationship between the parties as a joint venture, for which the analogous laws of partnership provide a specific remedy.  Plaintiff is therefore not entitled to equitable remedies, and Argument Five of Defendant's Motion for Summary Judgment is accordingly GRANTED.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part, and Plaintiffs' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.  Because the Court's disposition of certain matters on summary judgment limits the remaining issues rather significantly, the parties are instructed to file a Second Supplemental Proposed Pretrial Order by January 17, 2006, with a Pretrial Conference to follow on January 24, 2006 at 9:30 a.m.  This case has been set for trial on February 21, 2006. The parties shall advise the Court within 10 days from the date of this Order whether they desire a second Settlement Conference before that time.

IT IS SO ORDERED this 20th day of December 2005.

James H. Payne
United States District Judge
Northern District of Oklahoma

13